985 F.2d 553
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
J. B. HUNT TRANSPORT, INCORPORATED, Plaintiff-Appellant,
v.
Clasford David INNIS; Dawn MArshall; Aaron Marshall;
Maxine Marshall; Alisha Douglas, Defendants-Appellees.
 No. 92-1273.
 United States Court of Appeals,
Fourth Circuit.
 Argued: December 2, 1992
Decided: January 26, 1993
 
 Appeal from the United States District Court for the District of South Carolina, at Spartanburg. G. Ross Anderson, Jr., District Judge. (CA-91-3263-3-1)
 William Marvin Grant, Jr., GRANT & LEATHERWOOD, Greenville, South Carolina, for Appellant. Kermit Sifley King, KING & VERNON, Columbia, South Carolina, for Appellees.
 Steven A. Snyder, GRANT & LEATHERWOOD, Greenville, South Carolina, for Appellant. Edwin Dashevsky, DASHEVSKY, HORWITZ, KUHN & DISANDRO, P.C., Philadelphia, Pennsylvania, for Appellees.
 D.S.C.
 AFFIRMED.
 Before ERVIN, Chief Judge, MURNAGHAN, Circuit Judge, and SPROUSE, Senior Circuit Judge.
 PER CURIAM:
 
 OPINION
 
 1
 Dawn Marshall, of Pennsylvania, was injured when a J.B. Hunt Transport, Inc. tractor drove over her. The driver of the tractor (with the trailer detached) was Clasford David Innis, at the time of the claimed injury, a J.B. Hunt truck operator.
 
 
 2
 J.B. Hunt is incorporated under the laws of Georgia, conducting business in several states, including South Carolina where the alleged accident occasioning the injury took place.[1]
 
 
 3
 The accident occurred at a time when Marshall had been for several days travelling with Innis on a J.B. Hunt truck while that company's business was being conducted. The trailer was detached from the tractor once Innis and Marshall arrived in South Carolina. Thereafter, Innis used the tractor to take Marshall and other passengers about the local area. The tractor, en route, stopped. Marshall got out, and, when Innis moved the tractor, she was struck and injured.
 
 
 4
 Innis pleaded guilty to a DUI felony charge and as a result was sentenced to an 18-month prison term in a South Carolina correctional institute.[2]
 
 
 5
 J.B. Hunt learned that Marshall had obtained an attorney with the intent of instituting (and was about to institute in Pennsylvania) a tort suit against it and Innis. J.B. Hunt then promptly filed a declaratory judgment action in the United States District Court for the District of South Carolina on October 28, 1991, asking the court to determine whether Innis was acting within the scope of his employment with J.B. Hunt at the time of the accident and, accordingly, whether J.B. Hunt could be held vicariously liable for Marshall's injuries. Roughly one week later, Marshall, et al., did as was expected and filed a state tort action in Philadelphia County, Pennsylvania. They then filed a motion to dismiss the declaratory judgment action. The district court granted that motion, and J.B. Hunt timely appealed.
 
 
 6
 Under the Declaratory Judgment Act, federal courts have the discretion to decide whether to hear a declaratory judgment action. See, e.g., Mitcheson v. Harris, 955 F.2d 235, 237 (4th Cir. 1992). The Fourth Circuit, however, does not simply review a district court's decision concerning a claim seeking a declaratory judgment under the common "abuse of discretion standard." Rather, we have chosen a not-so "wholly deferential posture" and have stated that "the appellate court must exercise its own judgment in reviewing the various interests at stake." Id. at 237; see also Charter Fed. Sav. Bank v. Office of Thrift Supervision, 976 F.2d 203, 208 (4th Cir. 1992) (stating that the appellate court should substitute its discretion"for that of the district court's in determining whether to entertain a declaratory judgment action").
 
 
 7
 When we exercise our own discretion in reviewing the district court's decision to dismiss J.B. Hunt's declaratory judgment action, we note that several factors (elaborated upon by the district court[3]) favor a dismissal of the instant declaratory judgment action. The district court in the instant case first expressed concerns about the existence of jurisdiction to entertain the declaratory judgment action-more specifically, concerns about the lack of an actual controversy and, consequently, a possible lack of diversity.
 
 
 8
 Although the issue is not wholly free from doubt, we assume that an actual controversy exists and bear in mind the guiding policy in favor of rendering declaratory judgments. See Aetna Casualty & Sur. Co. v. Quarles, 92 F.2d 321, 325 (4th Cir. 1937) (" 'The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.' " (quoting E. Borchard, Declaratory Judgments 107-09 (1934))). So, too, we do not regard realignment by which Innis would be grouped with J.B. Hunt, defeating complete diversity, sufficiently justified. Compare American Casualty Co. v. Howard, 173 F.2d 924, 926 (4th Cir. 1949) (Although declaratory judgment plaintiff and defendants shared common interests in another related civil proceeding, alignment of the parties on opposite sides for the declaratory judgment action was proper due to dispute over insurance coverage).
 
 
 9
 However, even assuming that the district court had jurisdiction to entertain the declaratory action, several additional factors render appropriate dismissal here. Those factors include the fact that the primary case concerning the accident and involving the same parties is pending in state court and the fact that resolution of J.B. Hunt's action would not resolve all the issues of the controversy (negligent entrustment and failure to supervise and to train properly, as well as respondeat superior, being involved). In addition, the impact on the principal party opposing the requested grant of declaratory judgment, namely, Marshall, should not be ignored.
 
 
 10
 The issue raised by J.B. Hunt clearly anticipates a key question to be tested and likely defense (in the sense that J.B. Hunt would undoubtedly assert that Innis was not acting within the scope of his employment) in the state court litigation. Although technically Marshall's suit was filed shortly after J.B. Hunt filed for declaratory relief, J.B. Hunt clearly was on notice that Marshall was planning litigation. It expected the suit and therefore immediately filed the instant action.
 
 
 11
 The mere fact that another suit is pending should not, alone, lead to dismissal of the declaratory action. See, e.g., Maryland Casualty Co. v. Boyle Constr. Co., 123 F.2d 558, 562 (4th Cir. 1941). But, here the question of whether Innis acted within the scope of his employment would be a key issue in the state proceeding-to which J.B. Hunt is a party-and could also be resolved at that time. Declaratory relief should not be used to deprive the real plaintiff of the choice of forum or to determine merely the "validity of a defense" which would be asserted and could be determined in another action. See, e.g., Aetna Casualty, 92 F.2d at 325 ("It is well settled that the declaratory remedy should not be invoked merely to try issues or determine the validity of defenses in pending cases."); see also Cunningham Bros., Inc. v. Bail, 407 F.2d 1165, 1167 (7th Cir.), cert. denied, 395 U.S. 959 (1969) (The Declaratory Judgment Act should not be used solely to compel personal injury plaintiffs to litigate their claims at a time and place chosen by alleged tortfeasor.); Boyle, 123 F.2d at 564 (The act " 'was not intended ... to enable a party to obtain a change of tribunal and thus accomplish in a particular case what could not be accomplished under the removal act ....' " (quoting American Auto. Ins. Co. v. Freundt, 103 F.2d 613, 617 (7th Cir. 1939))).
 
 
 12
 Furthermore, as the district court noted, an adjudication of the employer-employee relationship eliminates neither Innis nor J.B. Hunt from the state trial, but may have a substantial impact upon Marshall's ability to collect payment for her injuries. In order to reach the deepest pocket, Marshall clearly would hope to establish during her trial-indeed, it will be a vital element to her case-that Innis was acting within the scope of his employment at the time of the accident. Dismissing J.B. Hunt's action and permitting Marshall to proceed with that course in state court does not leave J.B. Hunt without alternatives in which to vindicate its interests. As a party to the state suit, J.B. Hunt can raise and pursue the issue of vicarious liability in that forum. Relief is not truly needed from the federal court: "The object of the statute is to afford a new form of relief where needed, not to furnish a new choice of tribunals or to draw in the federal courts the adjudication of causes properly cognizable by courts of the states." Aetna Casualty, 92 F.2d at 324 (emphasis added).
 
 
 13
 J.B. Hunt has argued that it was not "forum shopping," but rather that it brought the action in federal court in South Carolina because, among other things, of the availability of key witnesses and sources of proof, because South Carolina law will control the issue of the scope of Innis' employment, and because the Philadelphia court system is allegedly slow.[4] Of course, not all of the witnesses are in South Carolina. The injured Marshall, for one, resides in Pennsylvania. All of J.B. Hunt's concerns about the propriety of the forum, however, clearly could be raised and better addressed in a motion for a change of venue. Indeed, J.B. Hunt even acknowledged that several factors it raised parallel those considered in a motion to transfer for forum non conveniens.
 
 
 14
 Finally, the above factors favoring dismissal are further buttressed by the fact that the declaratory relief sought would not resolve J.B. Hunt's liability in the underlying dispute. We have recently emphasized that
 
 
 15
 [i]n deciding whether to entertain a declaratory judgment action, a federal court should analyze whether its resolution of the declaratory action will settle all aspects of the legal controversy. This court has long recognized that it makes no sense as a matter of judicial economy for a federal court to entertain a declaratory action when the result would be to "try a controversy by piecemeal, or to try particular issues without settling the entire controversy."
 
 
 16
 Mitcheson, 955 F.2d at 239 (emphasis added) (quoting Aetna Casualty, 92 F.2d at 325). Although a federal court could decide and resolve in one suit the issue of vicarious liability, J.B. Hunt still would face the claims for negligent entrustment and failure to supervise and to train properly. The entire underlying controversy would not be resolved, but instead would require treatment in a "piecemeal" fashion. Moreover, many of the same facts, witnesses, and issues will resurface in the state litigation regardless of any decision in the declaratory judgment action. It seems that declaratory relief would not result in a more just, efficient, and economical determination of the entire controversy. See Brillhart v. Excess Ins. Co. of America, 316 U.S. 491, 495 (1942) ("Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties."); Mitcheson, 955 F.2d at 239 ("It hardly husbands scarce judicial resources to allow separate suits stemming from the same overall controversy and involving overlapping issues to proceed simultaneously on parallel tracks.").
 
 
 17
 Consequently, exercise of our discretion has led us to the same conclusion as the one reached by the district court. The district court was correct in dismissing the declaratory judgment action.
 
 AFFIRMED
 
 
 [1]
 Presumably also including Pennsylvania, where J.B. Hunt was subsequently sued by Marshall and others on claims arising out of the claimed accident
 
 
 [2]
 His antecedent Pennsylvania domicile was not thereby altered. See, e.g., Jones v. Hadican, 552 F.2d 249, 250-51 (8th Cir.), cert. denied, 431 U.S. 941 (1977); Domicil of Prisoner for Purposes of Federal Diversity Jurisdiction (28 U.S.C. § 1332), 23 A.L.R. Fed. 611 (1975 & Supp. 1992)
 
 
 [3]
 The district court carefully considered all the pertinent authorities and relevant factors, and its indication during arguments that it wished to dispose of the instant case (a fact pointed out by J.B. Hunt in its brief) is merely a recognition of what is true in every case-that the court wanted to fulfill its duty and resolve the matter before it
 
 
 [4]
 The parties dispute what forum's law will govern the issue of whether Innis was acting within the scope of his employment at the time of the accident. They also dispute just how slow the Philadelphia court system is