**CARDINAL CASUALTY COMPANY, Colony Insurance Company, Standard Exterminating Company, Inc.**

v.

**S.E.C.U.R.E., Homestead Insurance Company, Scottsdale Insurance Company.**

Civ. A. No. 2:93–0153.

United States District Court,
S.D. West Virginia,
Charleston Division.

Feb. 2, 1994.

---

Robert A. Lockhart, Heather Heiskell Jones, Spilman, Thomas, Battle & Klostermeyer, Charleston, WV, for plaintiffs Cardinal Cas. Co. and Colony Ins. Co.

J. Randolph Query, III, Charleston, WV, for plaintiff Standard Exterminating Co.

Derek W. Marsteller, Roy D. Baker, Jr., Richard L. Lancianese, Baker & Marsteller, Huntington, WV, for defendant S.E.C.U.R.E.

Anita R. Casey, Meyer, Darragh, Buckler, Bebenek & Eck, Charleston, WV, for defendant Homestead Ins. Co.

Mark W. Browning, Shuman, Annand & Poe, Charleston, WV, M. Paul Gorfinkel, Uniondale, NY, for defendant Scottsdale Ins. Co.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending are motions for summary judgment filed by Defendants S.E.C.U.R.E., Homestead Insurance Company, and Scottsdale Insurance Company. Also pending is a cross motion for summary judgment filed by Plaintiffs Cardinal Casualty Company and Colony Insurance jointly. Because this case is governed by the principles enunciated in *Mitcheson v. Harris,* 955 F.2d 235 (4th Cir. 1992), the Court concludes it will decline to exercise further jurisdiction, and **ORDERS** this case dismissed without prejudice.

Pursuant to a contract with the Kanawha County Board of Education, Standard Exterminating ("Standard") applied pesticides at certain public schools between February, 1986 and January, 1987. In June, 1990, a state class action was filed in the Circuit Court of Kanawha County, alleging that affected students sustained bodily injuries as a result of their exposure to pesticides at Andrew Jackson Junior High School, a school treated by Standard. In September and November of 1991, two additional actions, alleging similar claims, were filed with respect to pesticide exposure at the same school. These lawsuits were later consolidated into a single action. In April, 1992, a fourth civil action was filed alleging similar claims of pesticide exposure at Spring Hill Elementary and Dunbar High Schools.

Standard Exterminating is a Defendant in each of these state lawsuits,[1] and is sued as a West Virginia corporation; other West Virginia entities are also named as Defendants. Each lawsuit involves only state law claims such as negligence, strict liability, and breach of warranty. Because certain Defendants are West Virginia citizens, none of these state actions are removable under 28 U.S.C. § 1441(b).

This federal declaratory action arises from a dispute among carriers over which of them must defend and indemnify Standard from these state based claims.

Since 1986 Standard has been insured by five companies through general liability insurance policies. From September, 1985, through September, 1986, Standard was insured by Defendant Scottsdale Insurance Company ("Scottsdale"). From September, 1986, through March, 1989, Standard was insured through policies issued by Homestead Insurance Company ("Homestead"). From March, 1989, through March, 1990, Standard was insured by Defendant S.E.C.U.R.E. From March 1990, through March, 1991, Standard was insured by Colony Insurance Company ("Colony"). From March, 1991, through March, 1992, Standard was insured by Cardinal Casualty ("Cardinal"). Thereafter Standard was again insured by Scottsdale.

The Waite Hill Insurance Group manages Cardinal and Colony. In May, 1991, Waite Hill received a General Liability Loss Notice of the suit filed in June, 1990.[2] In May,

---

1. Standard was not named as a Defendant in the complaint filed June, 1990. The complaint was amended in May, 1991, to add Standard as a Defendant.

2. See footnote one.

1992, Waite Hill received a loss notice of the suit regarding Spring Hill Elementary School and Dunbar High School. Acting on behalf of Cardinal and Colony, Waite Hill accepted Standard's tender of claims and retained counsel to defend Standard. By letter dated December 20, 1991, Standard's counsel notified Homestead and S.E.C.U.R.E. of the claims against Standard.

On November 6, 1992, Cardinal and Colony brought this declaratory action against Homestead and S.E.C.U.R.E., pursuant to the Declaratory Judgment Act and the Court's diversity jurisdiction.[3] The third amended complaint adds Scottsdale as a Defendant, and seeks a judgment 1) requiring the Defendants to defend and indemnify Standard in the state lawsuits against it; 2) holding the Defendants jointly and severally liable for the pro rata reimbursement of Cardinal and Colony for costs, expenses and attorney fees, plus interest, arising out of the state lawsuits; 3) requiring the Defendants to share in the future costs and expenses of defending Standard; 4) establishing a formula by which insurers are liable for the indemnification of Standard; and 5) requiring the Defendants to reimburse Cardinal and Colony for their costs and reasonable attorneys' fees. All of these claims involve state insurance law; no federal claims or questions are alleged.

In response to the federal action, S.E.C.U.R.E. and Homestead have denied either the duty to defend or indemnify Standard. Scottsdale has agreed to participate in Standard's defense, but contests the amount of its liability for defense costs. Scottsdale has also reserved the right to assert defenses to coverage.

S.E.C.U.R.E. seeks summary judgment based on 1) the Plaintiffs' failure to establish that alleged injuries suffered in the underlying state actions occurred during S.E.C.U.R.E.'s policy period; and 2) Standard's failure to respond to a Request for Admissions. Homestead seeks summary judgment on grounds the company never received timely notice of state claims against Standard. Scottsdale seeks summary judgment on grounds that a pollution exclusion in Standard's policy prevents coverage. Scottsdale also objects to the payment of pretender defense costs, or defense costs arising before Standard tendered an insurance claim to Scottsdale.

As Plaintiffs, Cardinal and Colony seek summary judgment on three issues. First, they claim both S.E.C.U.R.E. and Homestead have a duty to defend Standard in the state actions, and that claims against S.E.C.U.R.E. may reasonably be interpreted to fall within the coverage of S.E.C.U.R.E.'s policy. Second, they claim all co-insurers must share equally in the defense costs incurred by Standard. Lastly, they seek recovery of costs and attorney fees in bringing this action.

■ Under the Declaratory Judgment Act federal courts have discretion in deciding whether to hear a declaratory action. In *Mitcheson v. Harris,* 955 F.2d 235 (4th Cir. 1992), the Court of Appeals analyzed the exercise of discretion in the context of a declaratory action to determine an insurer's duty to defend and indemnify its insured from a pending state lawsuit. That Court ultimately determined the district court should have declined declaratory jurisdiction.

In reaching this decision, the Fourth Circuit considered two factors. The first concerned the state's interest in deciding questions of state law:

> "[S]tate law ordinarily provides the rule of decision in pure diversity cases. There exists an interest in having the most authoritative voice speak on the meaning of applicable law, and that voice belongs to the state courts when state law controls the resolution of the case." *Id.* at 237.

While recognizing the federal interest in protecting out-of-state parties in diversity cases, the *Mitcheson* court stated that "[i]n declara-

---

**3.** The Declaratory Judgment Act provides as follows:

"In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added).

tory actions ... Congress has diminished the strength of these interests by making the exercise of such diversity jurisdiction discretionary with the court." In declaratory actions the federal courts possess "freedom not present in ordinary diversity suits to consider the state interest in having state courts determine questions of state law." *Id.* at 238. The state interest in making these decisions becomes even more significant when state law issues are close. *Id.* at 240.

In *Mitcheson* the court also considered the general interest in resolving all litigation from a single controversy by means of a single court system. *Id.* at 239. This factor is based on pragmatic concerns of efficiency and comity:

> "[A] federal court should analyze whether its resolution of the declaratory action will settle all aspects of the legal controversy. This court has long recognized that it makes no sense as a matter of judicial economy for a federal court to entertain a declaratory action when the result would be to 'try a controversy piecemeal, or to try particular issues without settling the entire controversy.'" *Id.*

The *Mitcheson* court noted further that "[i]t hardly husbands scarce judicial resources to allow separate suits stemming from the same overall controversy and involving overlapping issues to proceed simultaneously on parallel tracks." *Id.* When allegations from state litigation are non-removable, the state courts are "the only system with the jurisdictional power to resolve all facets of ... [the] controversy, and they are also in the best position to assess how best to handle any satellite suits." *Id.* As a matter of comity, the *Mitcheson* court noted that there "must be a reluctance on the part of federal courts to entertain a declaratory action that could result in entanglement between the two court systems." *Id.*

Although this declaratory judgment action is supported by diversity jurisdiction, it involves solely matters of state law. The Supreme Court of Appeals of West Virginia has not addressed certain contested legal issues, particularly with respect to Homestead's claim of pollution exclusion, liability for pre-tender defense costs, and the alloca-

tion of defense costs among responsible carriers. Clearly, state courts can and should provide the initial and most authoritative interpretation of these significant legal questions.

Further, the underlying state litigation involves non-removable state law claims, and the West Virginia courts are "the only system with the jurisdictional power to resolve all facets" of this controversy. The state courts are also in the best jurisdictional position to handle "satellite suits" concerning an insurer's duty to defend and indemnify. As recognized in *Mitcheson,* "it makes no sense as a matter of judicial economy for a federal court to entertain a declaratory action when the result would be to 'try a controversy piecemeal, or to try particular issues without settling the entire controversy.'" Although it is late in the litigation to end it without resolution in this forum, the Court is reluctant to address questions of first impression of state law, particularly when those answers could adversely affect the rights of numerous state litigants whose interests are not represented or protected here.

Accordingly the Court declines to exercise jurisdiction over this action, and, on its own motion, **ORDERS** this case dismissed without prejudice and stricken from the docket of the Court. The Clerk is directed to send a copy of this Order to counsel of record.