**AMERICAN MOTORISTS INSURANCE COMPANY,**
Plaintiff,

v.

**COMMONWEALTH MEDICAL LIABILITY INSURANCE COMPANY, Defendant.**

No. 4:03CV151.

United States District Court,
E.D. Virginia.
Newport News Division.

Feb. 17, 2004.

Erin L. Majka, Esquire, Todd S. Schenk, Esquire, Tressler Soderstrom Maloney & Priess, Chicago, IL, Richard T. Pledger, Esquire, Wallace Pledger LLC, Richmond, VA, Counsel for Plaintiff.

Glen A. Huff, Esquire, John R. Braley, IV, Esquire, Huff Poole & Mahoney PC, Virginia Beach, VA, Counsel for Defendant.

## OPINION AND DISMISSAL ORDER

REBECCA BEACH SMITH, District Judge.

This matter is before the court on defendant Commonwealth Medical Liability Insurance Company's motion to dismiss plaintiff American Motorists Insurance Company's complaint for a declaratory judgment. For the reasons set forth below, the court declines jurisdiction over the declaratory judgment action and **GRANTS** defendant's motion to dismiss.

### I. Procedural History

On June 27, 2001, Dr. James E. Lesnick, M.D. ("Lesnick"), filed a motion for judgment in the Circuit Court for the City of Williamsburg and County of James City against Dr. Hallet M. Mathews ("Mathews"), Mid–Atlantic Spine Specialists, Inc. ("Mid–Atlantic"), and others,[1] alleging defamation. Specifically, Lesnick alleged that Mathews made defamatory statements to

---

1. The other state-court defendants are not relevant to the federal litigation.

patients concerning Lesnick's professional competence, training, and medical ethics. Mathews is an officer and employee of Mid–Atlantic, a Virginia professional corporation for which he was working at the time the allegedly defamatory statements were made. Lesnick's motion for judgment sought $2 million in compensatory and $350,000 in punitive damages.

At the time the state-court action was initiated, both parties to the above-captioned declaratory judgment action undertook the defense of Mathews and Mid–Atlantic under separate insurance policies.. Plaintiff American Motorists Insurance Company ("AMICO"), an Illinois corporation with its principal place of business in Illinois, undertook the defense under a business owner's liability policy issued to Mid–Atlantic. Defendant Commonwealth Medical Liability Insurance Company ("CML"), a District of Columbia corporation with its principle place of business in the District of Columbia, undertook the defense under a medical malpractice liability policy issued to Mathews and Mid–Atlantic. Both companies undertook representation of Mathews and Mid–Atlantic subject to a reservation of rights.

On October 2, 2003, CML withdrew from representation of Mathews and Mid–Atlantic. On October 27, 2003, the defamation trial began with AMICO providing for Mathews's and Mid–Atlantic's defense. On November 5, 2003, AMICO filed a complaint in the above-captioned matter, seeking a declaratory judgment that: (1) AMICO has no duty to indemnify Mathews and Mid–Atlantic under the business owner's liability policy; (2) CML has a duty to indemnify Mathews and Mid–Atlantic under the medical malpractice policy; (3) CML has a duty to defend Mathews and Mid–Atlantic under the medical malpractice policy; (4) AMICO is entitled to a proportionate share of defense costs since the date that CML wrongfully withdrew from the defense of Mathews and Mid–Atlantic; and (5) AMICO is entitled to repayment from CML of any payment AMICO might make on behalf of Mathews and Mid–Atlantic.

On December 19, 2003, CML filed a motion to dismiss the complaint on several bases, including that this court should exercise its discretion not to assume jurisdiction over AMICO's complaint. On December 30, 2003, AMICO filed a memorandum in opposition to CML's motion to dismiss. In the memorandum in opposition, AMICO brought to the court's attention a number of new factual developments that substantially alter the declaratory judgment action.

According to AMICO's memorandum in opposition, on November 4, 2003, the state-court jury awarded Lesnick $350,000 in compensatory damages jointly and severally against all the defamation-suit defendants and $50,000 in punitive damages solely against Mathews and Mid–Atlantic. (Pl. Mem. in Opp. to Def.'s Mot. to Dismiss, at 3.) Judgment was entered on the jury verdict on November 21, 2003. (*Id.*) On December 22, 2003, AMICO entered into an agreement with Lesnick, whereby AMICO agreed to pay Lesnick $233,332.66 in compensatory and $50,000 in punitive damages in exchange for Lesnick's complete release from liability of Mathews and Mid–Atlantic. (*Id.* at 4.) "In return, Mathews and Mid–Atlantic agreed to expressly assign to AMICO all of their rights, both contractual and common law, against CML." (*Id.*) The particular terms of this assignment, and whether it included any agreement from AMICO not to seek reimbursement for the costs of Mathews's and Mid–Atlantic's defense, is not made clear by AMICO's memorandum.[2]

**2.** AMICO has not filed an amended complaint      including these additional facts. Therefore,

On January 2, 2004, CML filed a reply memorandum, and on January 6, 2004, CML requested a hearing on the motion to dismiss. No hearing is necessary to resolve this matter. The motion to dismiss is ripe for review.

## II. Standard of Review

Title 28 U.S.C. § 2201 affords district courts the discretionary authority to grant declaratory relief in cases where doing so "(1) will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Aetna Cas. & Sur. Co. v. Ind–Com Elec. Co.*, 139 F.3d 419, 422 (4th Cir.1998).[3] The Supreme Court has emphasized that the Declaratory Judgment Act "created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants," and that "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995). Nevertheless, the court may not decline jurisdiction "out of whim or personal disinclination, but may only do so for good reason." *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 375 (4th Cir.1994) (citations omitted).

When determining whether to exercise jurisdiction over a declaratory judgment action, the court should take into account considerations of federalism, efficiency, and comity. *Ind–Com*, 139 F.3d at 422. In particular, the court should consider: (1) the strength of the state's interest in having the issues raised in the federal declaratory judgment action decided in state courts; (2) whether the issues raised can be more efficiently resolved in a state court action; (3) whether permitting the action to go forward would result in unnecessary "entanglement" between the federal and state courts; and (4) whether the federal action is being used merely as a device for "procedural fencing." *Id.* A balance of these factors should determine whether the court exercises its discretion to hear the declaratory action. *Id.* at 424. Though there is no requirement that a parallel state-court proceeding be pending before the federal court may decline jurisdiction, the existence of a pending state-court action is an important consideration. *Id.* at 423.

The Fourth Circuit has a long history of reluctance when it comes to exercising jurisdiction over declaratory judgment actions involving the indemnification of parties to non-removable state court actions. In *Indemnity Insurance Company v. Schriefer*, the court affirmed dismissal of an action filed by an automobile insurance company against its insured seeking a declaration that the insurance company had no liability under its policy. *Indem. Ins. Co. v. Schriefer*, 142 F.2d 851, 852 (1944). The federal declaratory judgment action

---

they are not properly before the court for purposes of ruling on the motion to dismiss. *See United States v. Gaubert*, 499 U.S. 315, 327, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991) (stating that on a motion to dismiss, the court looks only to the allegations in the complaint).

**3.** In relevant part, 28 U.S.C. § 2201(a) provides:

In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration whether further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C.A. § 2201(a) (1994).

had been filed after a wrongful death suit had been filed in the Maryland state court against the insured. *Id.* at 853. The insurer had undertaken a defense on behalf of the insured, subject to a reservation of rights. *Id.* The Fourth Circuit held that dismissal of the declaratory judgment action was not an abuse of discretion, stating

[t]here could be no possible justification for dragging into federal court the litigation of issues pending in the state court, for the sake of obtaining a declaratory judgment as to a matter which will have no practical significance if the defendants prevail in the state court, and which the company can litigate as well after the termination of the state court litigation as now, if the defendants do not prevail.

*Id.*

Almost fifty years later, in *Mitcheson v. Harris,* the court reached the same conclusion, but this time reversed the district court's decision to exercise jurisdiction over a declaratory judgment action brought by a liability insurance company. *Mitcheson v. Harris,* 955 F.2d 235, 236 (1992). In *Mitcheson,* a homeowner's liability insurance company brought suit in federal court for a declaratory judgment that it had no duty to defend or indemnify its insured, a landlord, after suit had been brought against the landlord in Maryland

state court by a tenant alleging injury from lead paint. *Id.* Because the declaratory judgment action involved only issues of state law and the primary litigation concerning the liability of the landlord was pending in state court, it was an abuse of discretion for the district court to entertain the suit. *Id.* at 238. The court noted that "[a]bsent a strong countervailing federal interest, the federal court should not elbow its way into this controversy to render what may be an uncertain and ephemeral interpretation of state law." *Id.* (internal quotation marks and citation omitted).

Numerous other decisions in the Fourth Circuit have also held that declining jurisdiction over a liability insurer's declaratory judgment action seeking a determination of its obligations under a policy is not an abuse of discretion. *See, e.g., Centennial Life Ins. Co. v. Poston,* 88 F.3d 255, 258 (4th Cir.1996); *Cont'l Cas. Co. v. Fuscardo,* 35 F.3d 963, 966 (4th Cir.1994); *Aetna Cas. & Sur. Co. v. Quarles,* 92 F.2d 321, 325 (4th Cir.1937).

### III. Analysis

■ Under 28 U.S.C. § 1332, the court potentially possesses diversity jurisdiction over AMICO's claims.[4] Even if the court possessed diversity jurisdiction, however, the critical question of whether that juris-

---

4. In its motion to dismiss, CML argues that this court lacks subject matter jurisdiction because AMICO's complaint does not allege an actual case or controversy between the two insurers. CML's argument is based on the fact that Mathews and Mid–Atlantic have not been made party to the declaratory judgment action and the complaint does not allege that Mathews and Mid–Atlantic have any legal obligation to Lesnick. Citing *Nautilus,* AMICO responds that there is a justiciable case or controversy because the complaint does allege that CML incurred costs to defend Mathews and Mid–Atlantic, and that CML is liable for part of these costs under a contribution theory. (Pl.'s Mem. in Opp. to Def's Mot. to

Dismiss, at 5.) AMICO also claims that, to the extent Mathews and Mid–Atlantic are necessary to create an actual case or controversy, they can be added pursuant to Federal Rule of Civil Procedure 19. Because, even if an Article III case or controversy did exist, the court would decline jurisdiction, there is no need to determine whether AMICO pleaded an actual case or controversy in its complaint. *See Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 584–85, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999) (holding that there is no mandatory "sequencing of jurisdictional issues," and stating that "[i]t is hardly novel for a federal court to choose among threshold grounds for denying audience to a case on the merits").

diction should be exercised would remain. *Mitcheson*, 955 F.2d at 237. Applying *Ind–Com*'s four factor analysis, and conscious of the Fourth Circuit's caution with respect to entertaining declaratory judgments involving liability insurance contracts, the court exercises its discretion and declines to exercise jurisdiction over AMICO's declaratory judgment action.

First, the issues raised by this litigation are purely state law contract and insurance issues, which Virginia has a strong interest in deciding. *Mitcheson*, 955 F.2d at 238; *see also SEC v. Nat'l Sec. Inc.*, 393 U.S. 453, 458–59, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969) (discussing states' strong interest in regulating the insurance industry). Second, efficiency concerns counsel against a federal declaratory judgment action in this case. It is more efficient to resolve all litigation stemming from a single controversy in a single court system. *Mitcheson*, 955 F.2d at 239. Here, the underlying defamation suit is non-removable; Lesnick, Mathews, and Mid–Atlantic are all citizens of Virginia and the suit concerns only state-law causes of action. Thus, Virginia courts "are the only system with the jurisdictional power to resolve all facets of this controversy, and they are also in the best position to assess how best to handle any satellite suits." *Id.*

Third, exercising jurisdiction over the federal declaratory judgment could result in unnecessary "entanglement" between the state and federal courts. AMICO's complaint states that the Lesnick litigation is ongoing. If this court determined that neither AMICO nor CML had a duty to defend Mathews and Mid–Atlantic, the state litigation could be delayed consider-

ably while the state court defendants secured other counsel. *Mitcheson*, 955 F.2d at 239.[5] Moreover, though Mathews and Mid–Atlantic have not been joined in this declaratory judgment action, AMICO asks the court to determine what CML's obligations are under the medical malpractice insurance contract. If the court adjudicates this action, Mathews and Mid–Atlantic might be collaterally estopped from relitigating those issues in the event they sue CML for its refusal to defend them in the defamation suit. "Such issue preclusion will likely frustrate the orderly progress of state court proceedings," by resolving some issues while leaving others open and in need of resolution, and by requiring the state court to ascertain what federal-law preclusion principles apply, "thereby creating further entanglement." *Mitcheson*, 955 F.2d at 239–40.

Fourth, "procedural fencing" appears to have been a significant component of this declaratory judgment action. Though the state defamation suit was filed on June 27, 2001, AMICO did not challenge its obligations under the business owner's liability insurance policy until the state-court trial had begun. AMICO filed this action on November 5, 2003, less than two months before settling the suit on Mathews's and Mid–Atlantic's behalf, which obviates the need to bring this action as a declaratory judgment. Moreover, the November 5, 2003 complaint does not even mention the November 4, 2003 jury verdict, which further impacts the parties' rights and obligations. In other words, the circumstances underlying AMICO's complaint apparently no longer exist and

---

5. Based on the new factual developments alluded to in AMICO's memorandum in opposition to CML's motion to dismiss, it is unclear whether these circumstances still exist. Nevertheless, new entanglement issues arise from the additional facts. For example, if this court were to hold that AMICO had no duty to

defend or to indemnify Mathews and Mid–Atlantic under the insurance contract, it is not clear what the effect on the agreement between Mathews, Mid–Atlantic, and AMICO would be. Potentially, such a decision could result in additional litigation between AMICO, Mathews, and Mid–Atlantic.

it appears that all of AMICO's potential rights have fully matured so declaratory relief is not necessary to protect its interests.[6] AMICO's failure to file an amended complaint, pleading the existing facts in order for the court to decide the existing controversy further indicates that this suit may have been filed for purposes of procedural fencing "to provide another forum in a race for res judicata." *Ind–Com*, 139 F.3d at 422. Therefore, it is appropriate to not exercise jurisdiction over this declaratory judgment action.

### IV. Conclusion

For the reasons set forth, the court declines jurisdiction over the declaratory judgment action. Defendant's motion is **GRANTED**. Plaintiff's complaint is **DISMISSED**. The Clerk is **DIRECTED** to send a copy of this Opinion and Order to counsel for all parties.

**IT IS SO ORDERED.**

---

6. AMICO acknowledges as much in its memorandum in opposition to the motion to dismiss, which begins with the statement that "[d]ue to recent developments, AMICO will likely file an Amended Complaint." (Def. Mem. in Opp. to the Mot. to Dismiss, at 1.)