ZURICH INSURANCE
COMPANY, Plaintiff,

v.

Vincent ALVAREZ, Jr., a minor By and Through his Guardian ad Litem, Eleanor CALVA; Eleanor Calva, Jeffrey Parker, Joe T. Galindo, James R. Church, individually and dba Taser Industries; and Taser Systems, Inc.; Defendants.

No. CV 87–02264 JSL (Kx).

United States District Court,
C.D. California.

Sept. 8, 1987.

Gwen Freeman, Knapp, Petersen & Clarke, Universal City, Cal., for plaintiff.

James K. Hahn, City Atty., Los Angeles, Cal., for defendants.

## ORDER DECLINING EXERCISE OF JURISDICTION

LETTS, District Judge.

### A. INTRODUCTION

This case requires the Court to decide whether it should exercise diversity jurisdiction over a declaratory relief action. The plaintiff Zurich Insurance Company, an Illinois corporation ("Zurich"), requests this Court to determine whether, pursuant to an insurance policy ("Policy"), it has a duty to defend or indemnify the defendants Taser Industries, Inc., a Delaware corporation, and Taser Systems, Inc., a California corporation (collectively, "Taser,") against a tort claim for damages filed in California state court. Plaintiff Vincent Alvarez ("Alvarez"), filed the claim in state court against, among others, defendant City of Los Angeles ("City"). The City filed a cross-complaint for equitable indemnity and declaratory relief against Taser.

Jurisdiction is based on diversity of citizenship. 28 U.S.C. section 1332(a). Zu-

rich's action for declaratory relief in federal court is based on the Federal Declaratory Judgments Act, 28 U.S.C. sections 2201, 2202, and Rule 57 of the Federal Rules of Civil Procedure. For the reasons stated herein, on its own motion, this Court declines to exercise jurisdiction over this case.

## B. FACTS

Alvarez filed an action against the City in Los Angeles Superior Court[1] to recover damages, among other things, for police negligence in connection with the alleged use of a "Taser Stun Gun" which allegedly caused the death of Alvarez's father on August 10, 1983.

Subsequently, the City filed a cross-complaint against, among others, Taser as the alleged manufacturer of the "Taser Stun Gun." In its cross-complaint for declaratory relief, the City contends that Taser is liable for any damages which may be owed to Alvarez.[2] Zurich has issued a Policy for products liability to Taser.[3]

In the present action, Zurich contends that it is not obligated either to defend or indemnify Taser. Zurich alleges that the Policy expressly excludes all products manufactured prior to October 1, 1982, the effective date of the Policy, and that the "Taser Stun Gun," the use of which allegedly resulted in the death of Alvarez' father, was manufactured prior to October 1, 1982. In answers filed by the defendants, they deny each of the above allegations of Zurich. Taser, however, does not appear to have filed an answer to Zurich's complaint.

## C. DISCUSSION

This action for declaratory relief is brought under the Federal Declaratory Judgments Act, 28 U.S.C. Sections 2201 and 2202. These sections provide the sole basis for declaratory relief in federal courts.

■ As a general rule, federal courts are required to exercise all jurisdiction conferred upon them by the Constitution or the laws enacted by Congress, see *Cohens v. Virginia,* 19 U.S. (6 Wheat.) 264, 404, 5 L.Ed. 257 (1821). The Declaratory Judgments Act, however, is a procedural device only, and does not confer an independent basis for federal jurisdiction. *Alton Box Board Co. v. Esprit De Corp.,* 682 F.2d 1267, 1274 (9th Cir.1982). The exercise of jurisdiction for the purpose of granting declaratory relief, therefore, is not mandatory. As stated in *Brillhart v. Excess Ins. Co. of America,* 316 U.S. 491, 494, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942):

> Although the District Court ha[s] jurisdiction of the suit under the Federal Declaratory Judgments Act, it ... [is] under no compulsion to exercise that jurisdiction. The petitioner's motion to dismiss the bill was addressed to the discretion of the court. (Citations omitted.)

In *Brillhart,* 316 U.S. at 495, 62 S.Ct. at 1176, the Supreme Court enumerated several factors to guide district courts in the exercise of their discretion in this area:

> Where a District Court is presented with a claim such as was made here, it should ascertain whether the questions in controversy between the parties to the federal suit ... can better be settled in the proceeding pending in the state court. This may entail inquiry into the scope of the pending state court proceeding and the nature of defenses open there. The federal court may have to consider whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc.[4]

1. *Vincent Alvarez v. County of Los Angeles, City of Los Angeles,* Case No. C 506982.

2. For convenience of discussion, hereafter the Court will refer to the Alvarez action as if it had been brought directly against Taser, rather than by way of cross-claim by the City.

3. Zurich's pleadings do not disclose whether, in addition to Taser Industries, Inc., Taser Systems, Inc. also was insured under the Policy issued by Zurich. Neither is a copy of the Policy attached to Zurich's complaint for declaratory relief.

4. *See also* 6A J. Moore, J. Lucas & G. Grotheer, Jr., *Moore's Federal Practice,* para. 57.08[1] & n. 8 (2d ed. 1986).

The Court declines to exercise the jurisdiction conferred in this case to act upon Zurich's request for declaratory relief for the following reasons:

First, the exercise of jurisdiction would require the Court to determine facts which also may be at issue in an independent pending state proceeding.

Second, the Court considers it to be inappropriate to make a federal forum available for the sole purpose of deciding the rights and obligations of the federal parties which arise solely out of a state proceeding, which includes different parties, *while the state court proceeding is pending.*

Third, the dispute between the parties in the federal forum necessarily raises numerous and complex ancillary legal issues which are of first impression under California law and are better left for resolution by state courts.

### 1. *Common Questions of Fact*

It is not clear from the pleadings here precisely what facts would be at issue between the parties if this case were permitted to go forward. As framed by the insurer, Zurich, the issues would appear to be whether the "Taser Stun Gun," which allegedly was used negligently to kill Alvarez' father, was manufactured prior to October 1, 1982, and if so, whether the Policy excludes coverage for any liability for damages suffered by Alvarez.

The pleadings, however, provide no help in determining how clear it may be that the device allegedly used to kill Alvarez' father in fact was a "Taser Stun Gun" and that it was manufactured by Taser. The answers filed by the defendants, which deny each of the allegations made by Zurich, shed no additional light on the fact issues to be decided by this Court or the state court. It appears entirely possible, therefore, that in deciding whether to grant the relief requested in this action, the Court would be required to decide predicate facts which

may be fundamentally at issue in the state court action.

In *Allstate Insurance Company v. Harris,* 445 F.Supp. 847, 849–851 (N.D.Cal. 1978), District Judge Renfrew discussed a more concrete, but similar, issue as follows:

As to Sterling Joseph, the questions of coverage and of Allstate's duty to defend raise an issue of fact.... To resolve this controversy, the Court must thus decide a disputed question of fact that is at the heart of the underlying tort action:

....

[R]esolution of the question of Allstate's duty to defend Sterling Joseph requires adjudication of the disputed factual issue of intent. To resolve such an issue in a separate federal court proceeding when a similar issue involving the same evidence and essentially the same parties is pending in state court, and when all parties other than the insurance company are citizens of California, causes this Court grave concern. It is ordinarily neither sound judicial administration nor in the interests of the parties, particularly the injured state court plaintiff, to permit an out-of-state insurance carrier to drag the parties to a tort action into federal court to try a portion of the overall controversy among those parties. (Citations omitted.) These concerns have led to a general rule under the applicable federal law that a federal court should ordinarily decline to exercise diversity jurisdiction over a declaratory judgment action when the same issues of state law will necessarily be determined in a pending state suit. *E.g., Brillhart v. Excess Ins. Co.,* 316 U.S. 491, 495, 62 S.Ct. 1173, 1176, 86 L.Ed. 1620 (1942).

This Court believes that the reasoning in *Allstate* is applicable here and chooses to act accordingly.[5]

### 2. *Inappropriate Use of Federal Forum*

Zurich's purpose in bringing this action in federal court is to obtain a determination

---

**5.** The Court recognizes, however, that in *Allstate,* Judge Renfrew did not decline to exercise jurisdiction over the declaratory relief action before him, but decided instead to stay the fed-

eral action as to one of the defendants (Sterling Joseph) pending determination of the suit against him in state court.

of rights and obligations which exist, if at all, solely by virtue of the action pending in state court between its insured and a tort claimant. Specifically, Zurich seeks a determination that Alvarez' claim in state court, if proven valid, would not be covered by the Policy.

The issue of whether a particular claim, if valid, would be covered by an insurance policy can be separated and decided in federal court as a "case or controversy" independently from the claim itself. *Cf. Nashville, C. & St. L. Ry. Co. v. Wallace*, 288 U.S. 249, 53 S.Ct. 345, 77 L.Ed. 730 (1933).

The desirability of entertaining such an action in federal court prior to a determination of the validity of the claim in state court is questionable on a number of grounds. First and most obvious is that litigation is expensive. Since there is a possibility that the tort claim may be proven invalid in state court, there is no need to litigate in advance the issue of who should pay for the tort claim if it proves to be valid. In principle, at least, the expense of litigating the issue of coverage is best incurred only *after* a determination that the claim is valid. Until then, the money is much better saved and used, if possible, to settle the claim in state court.

One of the worst evils of making the federal forum available for declaratory relief is that it could result in a state tort claimant who is willing to settle his claim at a sacrifice price, being made to await a federal determination as to the responsibility for payment. Under California law, however, the duty of an insurer to address in good faith settlement offers made by an insured tort claimant runs not just to the insured but also to the claimant.[6] The insurer does not have the right to await a judicial determination as to coverage before honoring its obligation to deal fairly and in good faith.[7] Yet the provision of a federal forum which may produce a determination of non-coverage while the state court action remains pending seriously alters the effect of these obligations.

As a practical matter, the bad faith of an insurer which rejects a settlement offer while awaiting a determination of non-coverage would be exceedingly difficult to demonstrate. By posing the threat that the coverage question will be resolved in the insurer's favor while the state court action is pending, the federal action tends to exert a profound influence on the state court proceeding itself by changing the balance in settlement bargaining.

The advantages gained by the insurer as a result of this influence appear to be incalculable. Even to the most objective and experienced professional, an insurance coverage question may look very different when full presentation of the tort claimant's liability and damage case has resulted in a verdict which can be satisfied only if insurance proceeds are available, as contrasted to how the same question may look when posed in advance as a pure question of law to be decided only against those liability facts necessary to define the coverage issue.

This effect may be particularly dramatic in tort cases which present low liability but high damage exposure. Such cases are typical of those in which declaratory relief is sought.

Such cases must be defended vigorously if maximum assurance is to be maintained that if tried they will be won. In consequence, prospective defense costs tend to be a major part of the incentive for the insurer to settle the action. So long as it remains in the case, the cost of defense remains the insurer's burden. It remains subject to the risk that if the case goes to trial, insurance proceeds will be the primary source for satisfaction of any high-end judgment.

By bringing the coverage question to the point of possible decision while the state tort action remains pending, the insurer effects a significant change. The prospect that the only source of payment for a sig-

---

**6.** *See Royal Globe Insurance Co. v. Superior Court*, 23 Cal.3d 880, 153 Cal.Rptr. 842, 592 P.2d 329 (1979).

**7.** *See Silberg v. California Life Insurance Co.*, 11 Cal.3d 452, 521 P.2d 1103, 113 Cal.Rptr. 711 (1974).

nificant verdict will not be available after trial tends to coerce the tort claimant to come to the settlement bargaining table before the federal action is adjudicated. There the tort claimant often will be met not only by the insurer, but also the insured. Faced with the immediate prospect of having to provide its own defense,[8] and often with financial catastrophe if it is ultimately forced to respond to a major verdict without contribution from its insurer, the insured suddenly may be willing to make a major contribution to a settlement. Therefore, the result of the pressures created by the federal action often may be to create a substantial possibility that the insurer will be able to force a settlement of the state court action in which it is required to contribute only a fraction of the value of its potential economic exposures.

Whether or not it is true that the filing of a federal action significantly affects the values exchanged in the state action, it seems clear that the principal effect is to force settlement there. In practice, making a federal forum available for the determination of declaratory relief actions brought by insurers often does not appear to result in a decision or a settlement based on the merits of the federal action.

In hindsight, therefore, it appears that the federal forum usually has been used not to perform the Constitutional function of deciding cases and controversies, but simply as a ploy to force settlement negoti-

ations to a successful conclusion in the state action.

This Court believes that it is inappropriate to use its limited facilities for such a purpose when the necessary effect is to shorten the time available for and ultimately to delay disposition of cases which are exclusively within its province, and which will be resolved solely by reference to matters at issue here.[9]

### 3. *Ancillary Issues*

The third reason why this Court declines to exercise diversity jurisdiction over the instant action is that it raises numerous difficult and complex ancillary issues of first impression under state law which are better left for decision by state tribunals. For purposes of earlier discussion, the Court has assumed that success at trial in a federal action would relieve the insurer of its continuing duty to defend its insured in the state court. Even this is far from clear.[10] What the situation might be in this regard pending federal appeal clearly remains to be decided.

Other questions as to which the answers are uncertain are: what impact, if any, the filing or initial decision in the federal action may have on the insurer's responsibilities concerning the settlement offers in the state action;[11] who pays for the insured's cost of the defense of the federal action and its appeal.[12] Other questions no doubt remain to be raised.

**8.** The point, if any, in the federal process, at which a successful insurer would be entitled under California law to discontinue provision of defense is unclear. *See infra.*

**9.** *Cf. Transamerica Occidental Life Ins. Co. v. Digregorio*, 811 F.2d 1249, 1255 (9th Cir.1987), where the court stated the proposition that: "If a district court generally were compelled to hear an ERISA insurer's declaratory suit, the insurer would be able to circumvent the beneficiary's choice of a state forum in every ordinary case on the insurance contract. We do not believe that Congress intended that result."

**10.** There appears to be no authority directly in point, *but cf. Firco, Inc. v. Fireman's Fund Insurance Co.*, 173 Cal.App.2d 524, 529, 343 P.2d 311 (1959). To require the insured to defend itself puts economic pressure on the insured to participate in settlement of the state action in a way which may not be consistent with the overall

policy of California law. *Cf. Gibbs v. State Farm Mutual Insurance Company*, 544 F.2d 423, 426 (9th Cir.1976) (quoting *Crisci v. Security Insurance Co.*, 66 Cal.2d 425, 58 Cal.Rptr. 13, 16–17, 426 P.2d 173, 176–77 (1967).)

**11.** Although there appears to be no authority directly in point, in *Gibbs v. State Farm Mutual Insurance Company*, 544 F.2d 423, 427 (9th Cir. 1976), the court held that "[f]ailure to settle because of the belief in non-coverage, even though in good faith, is an effort to further the insurer's own interest, and the insurer must therefore be willing to absorb losses resulting from its failure to settle." (Citations omitted).

**12.** *See* 14 G. Couch, *Couch on Insurance*, Section 51:92 (2d ed. 1982) (where the insurer defends the underlying action under a reservation of rights, as a general rule, in the declaratory judgment action, the insurer has no duty to supply or pay for the defense of its insured.)

It seems obvious that the answers to these questions, which must be presumed by the parties, have much to do with their bargaining positions during the pendency of the federal court action. The fact that such issues are mooted by simultaneous settlement of both the federal and state actions tends to prevent them from ever being decided. As a consequence, the present state of undesirable uncertainty remains unchanged by decision.

For the reasons stated herein, this Court declines to exercise jurisdiction in this case.

IT IS SO ORDERED.