**NORTH EAST INSURANCE COMPANY**

v.

**The NORTHERN BROKERAGE COMPANY.**

**Civ. No. JFM–91–1445.**

United States District Court,
D. Maryland.

Dec. 10, 1991.

Edward J. Hutchins, Jr. and Joel H. Oleinik, Baltimore, Md., for plaintiff.

Donald Davis, Jr., Weinberg & Green, Baltimore, Md., for defendant.

## MEMORANDUM

MOTZ, District Judge.

North East Insurance Company ("North East") has brought this action pursuant to 28 U.S.C. § 2201 seeking a declaratory judgment that it has no duty either to defend or indemnify the Northern Brokerage Co. ("NBC") in connection with a tort action currently pending in the Circuit Court for Baltimore City. NBC has moved to dismiss for lack of jurisdiction and for failure to state a claim upon which relief can be granted.

### I.

NBC is a residential landlord in the city of Baltimore. From June 30, 1985 to June 30, 1986, North East, a Maine insurer, insured NBC in connection with its ownership of certain premises under a standard-form comprehensive general liability policy. Under the policy, North East agreed to indemnify NBC for sums it would be obligated to pay as damages for "bodily injury ... caused by an occurrence arising out of the ownership or maintenance of the insured premises." Additionally, North East assumed "the right and duty to defend any suit against the insured seeking damages on account of such bodily injury ... even if any of the allegations of the suit are groundless, false or fraudulent." The policy contains the following definitions:

> "bodily injury" means bodily injury, sickness or disease sustained by any person *which occurs during the policy period,*

including death at any time resulting therefrom;

\*　　\*　　\*　　\*　　\*　　\*

"occurrence" means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.

(Emphasis added). The net effect of these definitions is to limit NBC's coverage to liability for "bodily injury" that occurred between June 30, 1985 to June 30, 1986.

In February, 1987, David Allen Young and his mother, Arlene Young (collectively "the Youngs"), filed suit against NBC in the Circuit Court for Baltimore City. Their complaint alleges that NBC is liable for injuries arising from the ingestion of lead paint by David, an infant, while the Youngs lived as tenants of NBC at 1824 Aiken Street, Baltimore City. Together, the Youngs seek damages in the amount of $1.05 million. The house in which the Youngs lived was one of the premises for which NBC had obtained insurance from North East. Accordingly, NBC made a demand to North East for a defense and for indemnity under the terms of the policy. For the last four years, North East has provided NBC with counsel to conduct its defense.

Trial in The Youngs' lawsuit was scheduled to begin on February 8, 1991. On February 5th, defense counsel appointed by North East moved to postpone the trial in order that North East might first bring a declaratory action to resolve the "crucial" issue of insurance coverage. The motion was granted and trial was postponed until April, 1992. On May 23rd, North East filed this action seeking a declaration that it no longer has any duty to defend and or indemnify NBC. Specifically, North East alleges that "elevated levels of lead in [David Young's] blood were first discovered on July 24, 1986, well after the expiration of the policy period." North East thus claims that for the purpose of determining coverage, there was no "bodily injury" within the policy period.[1]

---

1. North East's complaint actually states that　there was no "occurrence" during the policy

## II.

■ The Declaratory Judgments Act, 28 U.S.C. § 2201(a) provides that "[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." The exercise of jurisdiction under the Act is not compulsory. *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494, 62 S.Ct. 1173, 1175, 86 L.Ed. 1620 (1942). Thus, even if a "case or controversy" within the meaning of Article III of the Constitution is presented, the district court, in its discretion, must be satisfied that declaratory relief is appropriate. *White v. National Union Fire Ins. Co.*, 913 F.2d 165, 167 (4th Cir.1990).[2]

■ Federal standards dictate when declaratory relief is appropriate in federal court, even in cases under this court's diversity jurisdiction. *Id.; Cincinnati Ins. Co. v. Holbrook*, 867 F.2d 1330, 1332 (11th Cir.1989); *see also* 6A *Moore's Federal Practice* § 57.02[5] (1989); 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2756 (1983).[3] In determining whether declaratory relief is appropriate here, two questions must be asked: "(1) whether the judgment will serve a useful purpose in clarifying the legal relations in issue; or (2) whether the judgment will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *White*, 913 F.2d at 168 (quoting *National R.R. Passenger Corp. v. Consolidated Rail Corp.*, 670 F.Supp. 424, 431 (D.D.C.1987)).

Within recent years courts have increasingly recognized the propriety of exercising jurisdiction under § 2201 to declare the rights and liabilities of parties to an insurance contract before any judgment has been rendered against the insured. *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1065 (6th Cir.1987); *see also White*, 913 F.2d at 168–69; *Cincinnati Ins.*, 867 F.2d at 1333; *Metropolitan Property & Liab. Ins. Co. v. Kirkwood*, 729 F.2d 61, 63–64 (1st Cir. 1984); *ACandS v. Aetna Cas. & Sur. Co.*, 666 F.2d 819, 823 (3rd Cir.1981); *Stout v. Grain Dealers Mut. Ins. Co.*, 307 F.2d 521, 524–25 (4th Cir.1962); *Consolidated Rail Corp.*, 670 F.Supp. at 431–32 (indemnity agreement); *but see Century Indem. Co. v. McGillacuty's Inc.*, 820 F.2d 269, 270–71 (8th Cir.1987) (waste of judicial resources to decide "hypothetical" coverage dispute); *Zurich Ins. Co. v. Alvarez*, 669 F.Supp. 307, 310 (C.D.Cal.1987) (same).

A principal advantage of a prior determination of insurance coverage, though technically "speculative," is that it may allow for the more efficient settlement of tort claims. *E.g., Green*, 825 F.2d at 1064 (quoting *ACandS*, 666 F.2d at 823). As the Third Circuit stated in *ACandS*:

[A] liability insurer's indemnification agreement carries with it not only an obligation to pay judgments against the insured but also, in the real world, to pay settlement amounts. Indeed, liability insurers owe fiduciary obligations to their insureds with respect to the consideration of settlement offers and the conduct of settlement negotiations. It would turn the reality of the claims adjustment

period. However, the time limitation on coverage under the policy appears in the definition of "bodily injury" and not "occurrence." Thus, even if there is an "occurrence" during the policy period, there is no coverage unless the resulting "bodily injury" also occurs within the policy period. *See Keene Corp. v. Insurance Co. of No. America*, 667 F.2d 1034, 1040 (D.C.Cir.1981), *cert. denied*, 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875.

2. Here, the constitutional "case or controversy" requirement is met despite the fact that the Youngs have not yet obtained a judgment against Northern. *See White*, 913 F.2d at 167–68 (citing *Maryland Cas. Co. v. Pacific Coal &*

*Oil Co.*, 312 U.S. 270, 273, 274, 61 S.Ct. 510, 512, 513, 85 L.Ed. 826 (1941).)

3. Northern relies primarily on the decisions of the Maryland Court of Appeals in *Allstate Ins. v. Atwood*, 319 Md. 247, 572 A.2d 154 (1990) and *Brohawn v. TransAmerica Ins. Co.*, 276 Md. 396, 347 A.2d 842 (1975) to argue that jurisdiction is improper in this case. Despite Northern's reliance on Maryland law, its arguments remain relevant in the federal context since the standards governing the availability of declaratory relief in insurance disputes in the Maryland courts have much in common with federal standards.

process on its head to hinge justiciability of an insurance agreement on the maturation of a suit to judgment when the overwhelming number of disputes are resolved by settlement. The respective interests and obligations of insured and insurers, when disputed, require determination much in advance of judgment since they will designate the bearer of ultimate liability in the underlying cases and hence the bearer of the onus and risks of settlement... To delay for the sake of more concrete development would prevent the litigants from shaping a settlement strategy and thereby avoiding unnecessary costs. The declaratory judgment relief was intended to avoid precisely the "accrual of avoidable damage to one not certain of his rights."

*ACandS*, 666 F.2d at 823 (citations omitted).

### III.

As indicated above, Northeast contends here that because elevated levels of lead were first discovered in David Young's blood on July 24, 1986—twenty-four days after expiration of the insurance policy in issue—NBC has no coverage for the Youngs' claim. This contention rests upon the legal premise that under Maryland law the manifestation of injury is the triggering event for insurance coverage.

This premise is open to question. In *Harford Mut. Ins. Co. v. Jacobson*, 73 Md. App. 670, 684, 536 A.2d 120, 127 (1988), the Maryland Court of Appeals expressed its "agree[ment] with those cases [which hold] that the date of an 'occurrence' for purposes of determining coverage are under an insurance policy is the date when the harm is first discovered." However, in *Jacobson* the lead in the tort plaintiff's blood was first discovered *before* any insurance policy in question had come into effect. Thus, the Court of Special Appeals was not called upon to make a clear choice between the so-called "exposure" theory and the "manifestation" theory of coverage. Furthermore, in a recent decision, the Maryland Court of Appeals declined to endorse the ruling in *Jacobson*. *See Lloyd E. Mitchell, Inc. v. Maryland Cas. Co.*, 324

Md. 44, 595 A.2d 469, 478 (1991). There, the court held that, because of the nature of the disease process of asbestosis, insurance coverage is triggered under the standard policy provisions "when asbestos is inhaled and retained in the lungs." In so holding the court stated that it was refraining from commenting upon the correctness of the *Jacobson* decision "in the context of the subject matter there involved." *Mitchell*, 595 A.2d at 478 n. 5.

### IV.

█ It is against the background of these general principles of federal declaratory judgment law and Maryland insurance law that I must determine whether to exercise my discretion to entertain this action. Five considerations lead me to the conclusion that the action should be dismissed.

First, although Northeast argues that there is no overlap between the issue of the timing of the manifestation of the increased level of lead in David Young's blood and the cause of that increase, that determination cannot be made in the abstract but only in the context of the environment or environments in which David was exposed to lead paint. The setting of that context may well require consideration of issues germane to NBC's asserted tort liability.

Second, even assuming that the issues of timing and causation are entirely separate and distinct from one another, Dr. Chisholm is obviously a critical witness on the question of whether the blood test conducted on July 24, 1986 was, in fact, the first manifestation of David's alleged lead poisoning. It would, at the least, be awkward for NBC to have to rely upon Dr. Chisholm as one of its witnesses in this declaratory judgment action before being required to cross-examine him as an adversary in the underlying tort action.

Third, in cases such as *ACandS* and *Mitchell*, the declaratory judgment action was brought against the background of pending mass tort litigation. Thus, resolution of the insurance coverage question in those cases was critical to the potential

settlement of a multitude of claims. In contrast, here there is a single underlying tort claim. While the insurance coverage issue may be relevant to settlement of that claim, it is no more relevant to settlement than are the underlying issues of liability and damages. Therefore, there is no reason why resolution of the coverage issue should be given priority.

Fourth, Northeast did not seek postponement of the trial in the Youngs' tort suit until the very eve of the scheduled trial date. This court should be extremely wary about entertaining last-minute declaratory judgment actions which may redound to the tactical advantage of the defendants in state court actions or to the insurers of those defendants.

Fifth, an important issue of public policy underlies the question of what event or events trigger coverage in lead-poisoning cases "and principles of federalism dictate that it be the affected [s]tate, not a federal court, which resolves [that issue]." *Travelers Indem. Co. v. Allied–Signal, Inc.,* 718 F.Supp. 1252, 1256 (D.Md.1989); *see also Smith v. Metropolitan Property & Liab. Ins. Co.,* 629 F.2d 757, 760 (2d Cir. 1980); *Alvarez,* 669 F.Supp. at 311. Section 12–601 of the Courts and Judicial Procedures Article of the Maryland Code, of course, provides a means for the certification of the question to the Maryland Court of Appeals. However, courts should not use the certification procedure promiscuously, asking the Court of Appeals to decide important issues prematurely and hypothetically on an undeveloped factual record where the medical evidence is sparse and the insured's underlying liability has not yet been established.

For these reasons NBC's motion to dismiss will be granted.