**ICAROM, PLC, Plaintiff,**

v.

**HOWARD COUNTY, MARYLAND,
Defendant.**

**Civ. A. No. AMD 94–2414.**

United States District Court,
D. Maryland.

Oct. 23, 1995.

---

Gerard D. Freed, Wilson, Elser, Moskowitz, Edelman & Dicker, Baltimore, MD, for plaintiff.

Katherine L. Taylor, Howard County Office of Law, Ellicott City, MD, for defendant.

## MEMORANDUM AND ORDER

DAVIS, District Judge.

Icarom, PLC ("Icarom"), a foreign corporation incorporated under the laws of the Republic of Ireland, instituted this federal diversity action against Howard County, Maryland ("Howard County"), for a declaratory judgment, pursuant to 28 U.S.C. §§ 2201, 2202 and 1332; and Fed.R.Civ.P. 57. Icarom asks this Court to issue a declaratory judgment that, under insurance policy no. PY 220684, it has no duty to defend or indemnify Howard County against a pending lawsuit, and future claims, arising from the off-site migration of pollutants and hazardous substances attendant to the county's operation of several landfills.

Howard County has filed a motion to dismiss, arguing that this Court should abstain from exercising jurisdiction because Icarom's claims are (1) not ripe for adjudication; (2) controlled by Maryland state law; and (3) related to litigation pending in state court.[1] Pursuant to Local Rule 105.6, the motion will be decided on the memoranda without a hearing. For the reasons set forth herein, the Court shall deny Howard County's motion.

## I. BACKGROUND

Howard County owns three landfills located within the County: Carr's Mill, New Cut, and Alpha Ridge. Each has been used at different times for "dumping of trash and other refuse, including possible hazardous materials."[2] At all three landfill sites, there is on-site contamination, and off-site migration of that contamination. A lawsuit has been instituted by Clyde B. and Shirley W. Pendleton in the Circuit Court for Howard County ("the Pendleton case")[3], alleging that the migration of pollutants and hazardous substances from the Alpha Ridge Landfill has contaminated the Pendletons' adjacent property and created a nuisance. Other resi-

dents have also filed administrative claims for compensation from Howard County for property damage allegedly resulting from the operation of the landfills.

From 1984 to 1987, the Insurance Corporation of Ireland Limited ("ICI") insured Howard County under general liability insurance policy no. PY 220684 ("the Policy"). In December 1993, Howard County notified Icarom, ICI's successor in interest, that hazardous substances at the Carr's Mill and New Cut landfills had caused damage to neighboring properties. Howard County informed Icarom that it was expecting Icarom to fulfill its defense and indemnification obligations pursuant to the Policy.

In late January 1994, Howard County informed Icarom in writing of the Pendleton case. Howard County later sent Icarom a second letter discussing the specific claims and damages for which Howard County was requesting defense and indemnification: (1) the Pendleton case and any judgment resulting therefrom; (2) the New Cut residents' claims; (3) the Carr's Mills residents' claims; (4) the cost of cleaning up any third-party property damaged as a result of the contamination by, or operation of, the Alpha Ridge, New Cut, and Carr's Mills landfills; and (5) the cost and expense of any necessary clean-up efforts at the landfill sites. In response, Icarom denied coverage under the Policy for defense and indemnity of all the administrative claims asserted by county residents and the cost of remedying any damage to third-party property. Icarom based its decision on the grounds that there had been no "property damage," as that term is defined in the Policy, and that there had been no "occurrence" during the Policy period. As to the Pendleton case, Icarom agreed to undertake the defense with an express reservation that it would deny coverage if it were later determined that the Pendletons' nuisance claim arose solely from the off-site migration of

---

**1.** In support of its abstention argument, Howard County also argues that Icarom's declaratory judgment action should be dismissed because it was not brought in compliance with Maryland Rule 2–214 on intervention. The Court finds this argument irrelevant to the present discussion on jurisdiction.

**2.** Carr's Mill Landfill was operated from 1953 to 1977; New Cut Landfill operated from 1944 to 1979–80; and Alpha Ridge Landfill, presently operating, has been open since 1980.

**3.** Case No. 93–GA–23549, filed October 28, 1993.

pollutants and other hazardous substances. Icarom then brought this action, seeking a declaratory judgment.[4]

## II. DISCUSSION

### a. Case or Controversy

■ In its motion to dismiss, Howard County's first contention is that this Court should abstain from exercising jurisdiction over this case because the issues are not ripe for adjudication.[5] Specifically, Howard County contends that the coverage dispute as to future claims does not present a justiciable controversy ripe for judicial resolution. Such a judicial determination, Howard County argues, would be an advisory opinion based on hypothetical scenarios and unalleged facts. Icarom argues, however, that since all the pertinent facts are known and that the pollution has already occurred, a declaratory action to determine coverage for property damage resulting from the pollution is ripe for adjudication.

■ Federal courts are authorized to issue declaratory judgments only in cases of actual controversy. Article III, Section 2 of the Constitution extends federal judicial power to adjudicate "cases" and "controversies" of various types. Accordingly, the Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a), gives federal district courts the power to "declare the rights and other legal relations of any interested party seeking such declara-

tion, whether or not further relief is or could be sought" provided that there exists "a case or controversy." 28 U.S.C. § 2201(a) (1988).

■ The Supreme Court has always interpreted the Act to grant federal district courts with the discretionary power to entertain a declaratory judgment action. *See Wilton v. Seven Falls Co.,* — U.S. —, —, 115 S.Ct. 2137, 2140, 132 L.Ed.2d 214 (1995) (citing and reaffirming *Brillhart v. Excess Ins. Co.,* 316 U.S. 491, 494, 62 S.Ct. 1173, 1175, 86 L.Ed. 1620 (1942)); *see also White v. National Union Fire Ins. Co.,* 913 F.2d 165, 167 (4th Cir.1990). The Court stated in *Aetna Life Insurance Co. v. Haworth,* 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937), that the test for determining whether there exists a justiciable "case or controversy" is whether the controversy "is definite and concrete, touching the legal relations of the parties having adverse legal interest." 300 U.S. at 240–41, 57 S.Ct. at 463–64. *See also White,* 913 F.2d at 167. The Court explained further in *Maryland Casualty Co. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941), that the determinative question is "whether the facts alleged, under the circumstances, show that there is a substantial controversy, between parties having adverse legal interest, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."

The record in this case supports the conclusion that the parties' dispute amounts to a

---

4. Icarom seeks numerous declarations, in the alternative:

(1) that it has no duty to pay any covered loss under the Policy until Howard County actually incurs a loss;

(2) that the "INDUSTRIES, SEEPAGE, POLLUTION AND CONTAMINATION CLAUSE" is part of the Policy ("the pollution exclusion clause");

(3) that it has no duty to indemnify or defend Howard County against any of the claims of the neighboring residents;

(4) that it has no duty to indemnify or defend Howard County for the cost of cleaning up any third-party property or cleaning up any of the three sites, to the extent that such clean-up efforts are necessary to mitigate actual or potential damages to third-party property;

(5) that the seepage, pollution or contamination related to the landfills was not "sudden, unintended or unexpected" from the stand-

point of Howard County, and thus not covered under the Policy;

(6) that the *Pendleton* case and the several claims made for remediation and/or potential damages to off-site owners' property do not constitute "physical injury" to or loss or "destruction of tangible property" as defined in the Policy;

(7) that the continuous nature of the dumping of trash and other refuse, as well as the continuous and ongoing contamination and off-site migration of the pollutants and other hazardous substances, does not constitute "an occurrence"; and

(8) that if the nuisance claim is determined to arise solely from pollution, Icarom has no duty to indemnify or defend Howard County in the *Pendleton* case.

5. Howard County concedes, however, that the coverage dispute with respect to the *Pendleton* case is ripe.

justiciable controversy. The parties disagree whether the pollution exclusion clause is part of the Policy, and if it is, whether the pollution in question was caused by a "sudden, unintended and unexpected happening" as stated in the pollution exclusion clause.[6] Icarom maintains that the pollution exclusion clause of the Policy excludes all off-site property damage claims from coverage, arguing that there is no coverage for "the cost of cleaning up any third-party property damaged as a result of the contamination by, or ... operation of," the three landfill sites. Howard County vigorously contends that the pollution exclusion clause is not even a part of the Policy. In the alternative, Howard County contends that the clause is inapplicable to claims arising where seepage, pollution or contamination is caused by a sudden, unintended and unexpected occurrence.

This disagreement presents a definite and concrete dispute which is ripe for adjudication. All the salient facts establishing a right to declaratory relief have already occurred. For example, several off-site residents have already instituted claims against Howard County. In fact, according to Howard County's July 11, 1994, letter to Icarom, the process of negotiating settlements with seven aggrieved landowners has already begun. Thus, a declaratory judgment of the issues presented, in advance of the institution of a lawsuit or the entry of a formal judgment, would not be "an abstract discussion and premature adjudication of factual issues that are not yet concrete." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515–16, 18 L.Ed.2d 681 (1967). *See also White v. National Union Fire Ins. Co.*, 913 F.2d 165, 167 (4th Cir.1990); *Riehl v. Travelers Ins. Co.*, 772 F.2d 19 (3d Cir.1985).

**b. Legal Standard for Declaratory Judgments**

■■■ Howard County further contends that although the coverage issues related to the *Pendleton* case are justiciable, this Court is precluded from issuing a declaratory judgment because the Maryland Court of Appeals in *Allstate Ins. Co. v. Atwood*, 319 Md. 247, 255, 572 A.2d 154, 158 (1990), held that an insurer may not litigate insurance coverage before the trial of the underlying tort claim. Admittedly, this Court's jurisdiction in this case is based solely on diversity. Federal standards, however, govern federal courts' determination of the propriety of declaratory relief under the Declaratory Judgment Act. *White*, 913 F.2d at 167; *see also* 6A *Moore's Federal Practice* § 57.02[5] (1989); 10a C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2756 (1983); *Cf. Continental Cas. Co. v. Fuscardo*, 35 F.3d 963, 968 (4th Cir.1994) ("The simple fact that [a related] state court action was pending when the federal declaratory action was filed is not determinative of the question [of the propriety of declaratory relief].") (Niemeyer, J., dissenting).

■■■ A federal court has the discretion to entertain a declaratory judgment action when it finds that the declaratory relief sought "(i) will serve a useful purpose in clarifying and settling the legal relations in issue; and (ii) will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Fuscardo*, 35 F.3d at 966 (quoting *Nautilus Ins. Co. v. Winchester Homes*, 15 F.3d 371, 375 (4th Cir.1994) (quoting E. Borchard, *Declaratory Judgment* 107–09 (1934))). *See also White v. National Union Fire Ins. Co.*, 913

---

6. The "INDUSTRIES, SEEPAGE, POLLUTION and CONTAMINATION CLAUSE" provides in pertinent part:

This Insurance does not cover any liability for
(1) Personal Injury or bodily injury or loss of, damage to, or loss of use of property directly or indirectly caused by seepage, pollution or contamination, provided always that this paragraph (1) shall not apply to liability for Personal Injury or Bodily Injury or loss of or physical damage to or destruction of tangible property, or loss of use of such property damaged or destroyed, where such seepage, pollution or

contamination is caused by a sudden, unintended and unexpected happening during the period of this Insurance.
(2) The cost of removing, nullifying or cleaning-up seepage, polluting or contaminating substance unless the seepage, pollution or contamination is caused by a sudden, unintended and unexpected happening during the period of this Insurance.
(3) Fines, penalties, punitive or exemplary damages.
Policy No. PY220684, NMA 1685, cl. 3.

F.2d 165 (4th Cir.1990); *Aetna Cas. & Surety Co. v. Quarles,* 92 F.2d 321 (4th Cir.1937). In deciding whether declaratory relief should be granted, when there is pending state litigation on the underlying claim, federal courts must factor federalism, efficiency, and comity into the discretionary balance. *Nautilus,* 15 F.3d at 376 (4th Cir.1994); *Mitcheson v. Harris,* 955 F.2d 235, 239 (4th Cir.1992). Federal district courts must consider the following factors: (1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state court; (2) whether the issues raised in the federal action can be more efficiently resolved in the pending state action; (3) whether the federal action might result in unnecessary entanglement between the federal and state systems due to overlapping issues of facts or of law; and (4) whether the federal action is being used merely as a device for "procedural fencing." *Nautilus,* 15 F.3d at 377. Finally, a federal district court may refuse to entertain a declaratory judgment only for "good cause." *Fuscardo,* 35 F.3d at 965.

These considerations sometimes militate against a federal court exercising its discretion to entertain a declaratory judgment action during the pendency of a related state action. To promote judicial efficiency, federal courts exercise restraint by not entertaining declaratory actions "when the result would be to 'try a controversy by piecemeal, or to try particular issues without settling the entire controversy.'" *Mitcheson,* 955 F.2d at 239 (quoting *Aetna Cas. & Sur. Co. v. Quarles,* 92 F.2d 321, 325 (4th Cir.1937)). This cautionary measure prevents federal courts from "gratuitous[ly] interfer[ring] with the orderly and comprehensive disposition of [the] state court litigation," *Brillhart v. Excess Ins. Co.,* 316 U.S. 491, 495, 62 S.Ct. 1173, 1176, 86 L.Ed. 1620 (1942), and "fosters the spirit of cooperation and respect ... between the two court systems." *Mitcheson,* 955 F.2d at 239.

**c. Application of Legal Standards to Instant Case**

   In the instant case, a declaratory judgment would clarify and settle the legal relationship between Icarom and Howard County. As a result, Icarom's obligation of defense and indemnification in the *Pendleton* case and other future claims would be settled. Icarom would know the scope of its duties and obligations to Howard County, if any, for off-site property damage claims. Howard County would be free of the uncertainty of Icarom's contractual duties, and thus be in a better position to negotiate with off-site residents claiming property damages.

Moreover, adjudication of the present case will not result in piecemeal resolution of the coverage dispute between Icarom and Howard County. It would resolve the controversy concerning: (1) the application and interpretation of the pollution exclusion clause, (2) whether the pollution, seepage or contamination is covered under the clause, and (3) whether Icarom has a duty to defend and indemnify Howard County in the *Pendleton* case and any future claims. Thus, the entire dispute would be resolved, the parties' rights and duties clarified and articulated, and needless future litigation of the same issues avoided. *See, e.g., Allstate Ins. Co. v. Green,* 825 F.2d 1061, 1065 (6th Cir.1987) (stating that an inquiry into whether the controversy could be fully adjudicated is required by Supreme Court precedent).

In addition, this declaratory judgment action does not risk interference with the ongoing *Pendleton* case in state court because this Court's declaration regarding insurance coverage and Icarom's duty to defend and indemnify is entirely separate and independent from the issues being litigated there. *See Fuscardo,* 35 F.3d at 967 ("A complete analysis of the efficiency factor also requires an inquiry into the scope of the state proceeding pending at the time the federal action was instituted.").

Furthermore, Maryland does not have a compelling state interest in resolving the issues presented in this federal declaratory judgment action, even though the issues are governed exclusively by Maryland state law. This case does not present any issue that Maryland state courts have not already decided. The issues of state law presented are not particularly "close," "problematic," or "difficult," and do not compel the conclusion

that this Court should abstain. *Mitcheson*, 955 F.2d at 236–40. The questions of state law involve the application of relatively settled principles of law to disputed facts; Maryland courts have established the applicable substantive law controlling this case. *Id.*

The issues of law and fact in the *Pendleton* case and those in this action do not sufficiently overlap to require resolution of all such issues in state court. The basic dispute here is over the existence and application of the pollution exclusion clause. That issue is not directly raised in the pending *Pendleton* case. If this Court were to reach final judgment before the state court, its resolution would not put at risk, by issue preclusion or claim preclusion, the ability of any state court to adjudicate fairly the underlying liability. *Fuscardo*, 35 F.3d at 968. Thus, Icarom's quest for declaratory relief here neither causes an unnecessary "entanglement" between the federal and state court systems, nor will it frustrate the state court proceedings. *Nautilus*, 15 F.3d at 377–78.

There is no evidence here of "procedural-fencing." Although Icarom could have filed this declaratory action in state court, Icarom legitimately chose to exercise its rights in federal court instead. As the Fourth Circuit stated in *Nautilus*:

> This is not a case in which a party has raced to federal court in an effort to get certain issues that are already pending before the state courts resolved first in a more favorable forum, for the issues presented in this declaratory action are not the same as those raised in the pending state court proceedings.

15 F.3d at 380. Thus, this Court finds no indication that Icarom is using this declaratory action merely as a "procedural-fencing" device.

### d. *North East Insurance v. Northern Brokerage Co.*

Finally, Howard County urges this Court to follow the holding in *North East Insurance Co. v. Northern Brokerage Co.*, 780 F.Supp. 318 (D.Md.1991). In *North East*, the Youngs sued their landlord, Northern Brokerage, for injuries resulting from the ingestion of lead paint by their minor child(ren). Northern Brokerage's insurer, North East, agreed to defend the claim. However, after discovery was complete, but prior to the commencement of trial, North East successfully moved in state court to postpone the trial in order to seek a declaratory judgment in federal court that it no longer had any duty to defend and indemnify Northern Brokerage because the "elevated levels of lead in [one of the minor plaintiffs'] blood were first discovered ... after the expiration of the policy period." Judge Motz dismissed the declaratory judgment action, holding that, under the circumstances presented there, the federal court did not have jurisdiction to entertain an action that required "consideration of issues germane" to the underlying state tort claim. *North East*, 780 F.Supp. at 321.

At first blush, the facts and procedural posture of *North East* are similar to the present case. As in this case, an insurer urged a federal court to declare its rights and duties under an insurance policy during the pendency of an underlying state tort claim. However, the superficial similarities between the two cases evaporate upon closer scrutiny. In *North East*, Judge Motz enumerated five considerations that led to the conclusion that the declaratory judgment action should be dismissed. First, he wrote that "the timing of the manifestation of the increased level of lead ... and the cause of that increase" were germane issues that overlapped in both the state and federal actions. *Id.* Second, it would have been "awkward" to permit Northern Brokerage, in the federal declaratory judgment action, to rely upon the testimony of a blood expert, while that same expert was planning to testify against Northern Brokerage in the state tort action. *Id.* Third, he found no reason why resolution of the coverage dispute should be given priority over the underlying issues of liability and damages. *Id.* at 322. Fourth, he viewed North East's "last-minute declaratory judgment action" as a "procedural-fencing" device. *Id.* Finally, he noted that there were unresolved state law questions concerning whether "the manifestation of injury is the triggering event for insurance coverage." *Id.* at 321. Judge Motz concluded that this

issue presented "an important issue of public policy," which required resolution by a state court. *Id.* at 322.

None of the court's reasons supporting abstention in *North East* are weighty in the instant action. Specifically, there is no overlap of issues in Icarom's declaratory judgment action and the *Pendleton* case or any future claims. As stated above, this action concerns the effect of the pollution exclusion clause on the legal relationship between Icarom and Howard County. Although one of the issues that this Court may address is the timing of the migration of pollutants, that issue is not germane in the pending state action. The central issue in the *Pendleton* case is whether or not the pollutants from Alpha Ridge Landfill caused damage to the Pendletons' property. Therefore, the germane issues involved in each case are "entirely separate and distinct from one another." *Id.* at 321. Additionally, there is no "critical witness" who would be required to testify for opposing parties in the two cases. Also, because the *Pendleton* case is still in discovery, there is no threat of Icarom using this declaratory judgment action as an eleventh hour procedural-fencing device. Moreover, as Howard County has conceded, there are no state law issues unresolved by Maryland state courts. Accordingly, Judge Motz's opinion in *North East* does not provide substantial support to Howard County.

## III. CONCLUSION

For the aforementioned reasons, this Court concludes that Icarom's declaratory judgment action presents a justiciable controversy ripe for judicial resolution. No discretionary factors militate against the exercise of jurisdiction by this Court. Accordingly, the motion to dismiss is this 23rd day of October, 1995, DENIED.