**MODERN EQUIPMENT COMPANY, a Nebraska corporation, Plaintiff,**

v.

**CONTINENTAL WESTERN INSURANCE COMPANY, INC. an Iowa corporation, Defendant.**

No. 1–01–CV–90005.

United States District Court,
S.D. Iowa,
Western Division.

June 12, 2001.

Kirk S. Blecha, Thomas E. Johnson, Baird Holm Mceachen Pederson Hamann & Strasheim, Omaha, NE, for plaintiff.

Robert Laubenthal, Smith Pederson & Beckman, Council Bluffs, IA, Michael G. Mullin, McGrath North Mullin & Kratz, Omaha, NE, for defendant.

## MEMORANDUM OPINION AND ORDER

PRATT, District Judge.

This action is before the Court on Defendant's Motion to Dismiss or, in the Alternative, Motion for Stay of Proceedings. Plaintiff brings this action to obtain a declaratory judgment regarding a coverage dispute over certain insurance policies issued to it by Defendant. Defendant seeks to dismiss the action on the grounds that Plaintiff fails to allege an actual controversy and fails to satisfy the requisite amount in controversy, because the underlying action over which the coverage dispute arose is still pending. In the alternative, Defendant asks the Court to stay the proceedings until the underlying action is completed. The Court denies Defendant's motion for the following reasons.

### I. BACKGROUND

The facts according to Plaintiff's Complaint are as follows. On or about May 10, 1995, Defendant, Continental Western Insurance Company ("Continental Western"), issued to Plaintiff, Modern Equipment Company ("Modern Equipment"), a commercial general liability insurance policy and a commercial excess insurance policy ("the Policies"). The Policies were in

effect from April 1, 1995 through April 1, 1996.

On or about November 15, 1995 and March 22, 1996, certain meat storage racks collapsed, which Modern Equipment had designed and sold to Patton Equipment Company, which then in turn sold them to Nebraska Beef, Ltd. On September 17, 1997, Nebraska Beef Ltd., South Omaha Investors Pack, L.L.C., and Guaranty Insurance Company (the "Nebraska plaintiffs") sued Modern Equipment in Nebraska state court. Modern Equipment tendered defense of the suit to Continental Western and requested an affirmation of coverage. Continental Western agreed to defend Modern Equipment, but did so under a reservation of rights. Continental Western also indicated in letters dated April 16, 1998 and October 27, 2000 its intent to exclude from coverage most, if not all, of the damages sought by the Nebraska Beef plaintiffs. On February 2, 2001, Modern Equipment filed this action. The Nebraska action is still ongoing.

## II. DISCUSSION

Modern Equipment brings its one claim in this action pursuant to the Declaratory Judgment Act. The Declaratory Judgment Act provides:

> In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a). Continental Western states that Modern Equipment's claim should be dismissed for two reasons. First, Continental Western argues that Modern Equipment has failed to allege an actual controversy. Second, Continental Western argues that Modern Equipment's claim does not satisfy the amount-in-controversy requirement of 28 U.S.C. § 1332.

### A. Actual Controversy

Continental Western brings its motion to dismiss with regard to whether Modern Equipment alleges an actual controversy pursuant to Fed.R.Civ.P. 12(b)(6). This is significant because Continental Western could have also brought its motion pursuant to Fed.R.Civ.P. 12(b)(1). *See Newman–Green, Inc. v. AptarGroup, Inc.*, No. 97 C 3489, 1998 WL 178584 (N.D.Ill. Feb.5, 1998); *see also L.A. Gold Clothing Co., Inc. v. L.A. Gear, Inc.*, 954 F.Supp. 1068, 1070 (W.D.Pa.1996) (explaining the difference between bringing a motion pursuant to Rule 12(b)(6) and bringing a motion pursuant to Rule 12(b)(1)). Under Rule 12(b)(1), a moving party may go beyond the allegations in the complaint and attack their sufficiency with affidavits and other evidence. *L.A. Gold Clothing*, 954 F.Supp. at 1070. That is not the case under Rule 12(b)(6).

In addressing a motion to dismiss under Rule 12(b)(6), the Court "is constrained by a stringent standard.... A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove *no* set of facts in support of his claim which would entitle him to relief." *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 545–46 (8th Cir.1997), (quoting *Fusco v. Xerox Corp.*, 676 F.2d 332, 334 (8th Cir.1982) (citation omitted) (emphasis added)). The complaint must be liberally construed in the light most favorable to the plaintiff and should not be dismissed simply because the court is doubtful that the plaintiff will be able to prove all of the necessary factual allegations. *See Parnes*, 122 F.3d at 546. And when considering a motion to dismiss for failure to state a claim, a court must accept the facts alleged in the com-

plaint as true. *See Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). A court may, however, take into account exhibits attached to the complaint when considering a Rule 12(b)(6) motion. *See Field v. Trump,* 850 F.2d 938, 949 (2nd Cir.1988). The Court will proceed under this somewhat less probing standard.

Having laid out the legal standard under which the Court must operate, the next step is to determine what law applies to the question of whether there is an actual controversy. The parties disagree on what law should apply. Continental Western contends that state law should apply and that after a choice of laws analysis, Nebraska law applies. Modern Equipment contends that federal law governs and that a choice of laws analysis would be misplaced. The Court agrees with Modern Equipment.

■ Federal law governs the question of whether an actual controversy exists. *See Icarom v. Howard County, Maryland,* 904 F.Supp. 454, 458 (D.Md.1995); *Standard Fire Ins. Co. v. Sassin,* 894 F.Supp. 1023, 1025–26 (N.D.Tex.1995); *Hunt v. State Farm Mutual Automobile Ins. Co.,* 655 F.Supp. 284, 286 (D.Nev.1987); *see also Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 680, 70 S.Ct. 876, 94 L.Ed. 1194 (1950) ("that the declaratory remedy which may be given by the federal courts may not be available in the State courts is immaterial."). The Third Circuit has explained the reasoning as follows:

> It is settled law that, as a procedural remedy, the federal rules respecting declaratory judgment actions, apply in diversity cases. While state law must determine the substantive rights and duties of the parties to the insurance contract, the question of justiciability is a federal issue to be determined only by federal law. "Thus a federal court decides for itself whether a party has standing to raise a particular issue, or

that a particular matter is justiciable or that it is not." If it were otherwise, then when state law exhibited more leniency in its definition of "case or controversy," the federal courts would be improperly exercising federal jurisdiction over a diversity action.

*Federal Kemper Ins. Co. v. Rauscher,* 807 F.2d 345, 352 (3rd Cir.1986) (internal citation omitted). The Court therefore applies federal law to this inquiry and does not need to go through a choice of laws analysis.

The Eighth Circuit has recognized the following: "The test to determine whether there is an actual controversy within the meaning of the Declaratory Judgment Act is whether 'there is a substantial controversy between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Marine Equip. Management Co. v. United States,* 4 F.3d 643, 646 (8th Cir.1993) (quoting *Caldwell v. Gurley Refining Co.,* 755 F.2d 645 (8th Cir.1985)), in turn citing *Maryland Cas. Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941); *see also Olympus Aluminum Products, Inc. v. Kehm Enterprises. Ltd.,* 930 F.Supp. 1295, 1305 (N.D.Iowa 1996) (acknowledging the Eighth Circuit's test in *Marine Equip. Management,* 4 F.3d at 646). The Eighth Circuit has further recognized that "because the test to determine the existence of a 'substantial controversy' is imprecise, the decision of whether such controversy exists is made upon the facts on a case by case basis." *Marine Equip. Management,* 4 F.3d at 646.

■ Modern Equipment contends that its claim meets the test set out in *Marine Equip. Management.* It states that Continental Western has already, through its letters to Modern Equipment, declared that they interpret the Policies to provide

little or no coverage for all or nearly all of the claims made in the Nebraska action. The interests of the parties are adverse, Modern Equipment states, because the interpretation of the Policies will determine who will bear the potential loss in the Nebraska action. Finally, Modern Equipment states that the dispute over the Policies has sufficient immediacy and reality in at least two important respects. First, it claims that given the magnitude of the Nebraska plaintiffs' claims compared to the financial resources of Modern Equipment, it is difficult, if not impossible, for Modern Equipment to engage in meaningful settlement negotiations. Second, Modern Equipment claims that if the Nebraska plaintiffs are successful in obtaining a multimillion dollar judgment against Modern Equipment, it might not be able to secure a supersedeas bond if the coverage dispute is not resolved and would therefore not be able to effectively litigate the dispute with Continental Western subsequently. Modern Equipment argues the impact on them is therefore immediate and threatening; a judgment would by implication at least make it impossible to continue its business.

Continental Western, on the other hand, insists that there is no actual controversy between the parties. It contends that until a determination has been made in the Nebraska action as to what elements of damage Modern Equipment is responsible for, if any, and in what amounts, there can be no actual controversy concerning the issue of coverage under the Policies. According to Continental Western, it asserted in its reservation of rights that only certain elements of damages would not be covered under the Policies.

Courts have consistently allowed insurers to sue insureds—prior to resolution of the underlying action—in order to obtain a declaration of coverage. In *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941), the Supreme Court held that an insurer's declaratory judgment action against an insured and a third party, seeking a declaration of non-coverage prior to the resolution of the underlying action, presented a justiciable controversy. The Eighth Circuit has also allowed such actions. In *Capitol Indemnity Corp. v. Miles*, 978 F.2d 437 (8th Cir.1992), the court allowed an insurer to sue an insured for a declaratory judgment that it had no duty to indemnify even though the underlying contribution action against the insured had not yet been resolved. In so doing, the court stated that it is most common for an insurer to bring an action for a declaratory judgment that it will have no duty to indemnify when the insured's liabilities are still contingent or unadjudicated. *Id.* at 438. *See also Aetna Cas. and Surety Co. v. General Dynamics Corp.*, 968 F.2d 707 (8th Cir.1992) (holding that a justiciable controversy existed between the insurer and the insured over particular sites even though no suit had been filed nor any settlement reached in the underlying action with respect to them). In addition, several lower courts have allowed insurers to pursue declaratory judgment actions against their insureds prior to the resolution of the underlying actions. *See Icarom v. Howard County, Maryland*, 904 F.Supp. 454 (D.Md.1995); *T.H.E. Ins. Co. v. Dowdy's Amusement Park*, 820 F.Supp. 238 (E.D.N.C.1993); *American Home Ins. Co. v. Martin*, No. 92 C 1377, 1992 WL 123132 (N.D.Ill. May 28, 1992); *contra Great Northern Paper Co. v. Babcock & Wilcox Co.*, 46 F.R.D. 67 (N.D.Ga.1968).

Insureds suing insurers for a declaration of coverage prior to resolution of the underlying action appears to be a much less common occurrence. In *McCuen v. International Insurance Co.*, Civ. No. 87–54–D–1, 1988 WL 242680 (S.D.Iowa Sept.29, 1988), it appears as though the court entered a declaratory judgment in an action

brought by some insureds and against their insurer while the underlying action was still pending. And in a different type of insurance coverage dispute, one where the insurer was suing the insured to obtain a declaration that the policies had lapsed, the Supreme Court reasoned that there would certainly be an actual controversy if the insured sued the insurer to recover benefits, and that the "character of the controversy and of the issue to be determined is essentially the same whether it is presented by the insured or by the insurer." *Aetna Life. Ins. Co. of Hartford, Conn. v. Haworth,* 300 U.S. 227, 243–44, 57 S.Ct. 461, 81 L.Ed. 617 (1937). *See also Atlantic Wood Indus., Inc. v. Argonaut Ins. Co.,* 258 Ga. 800, 375 S.E.2d 221, 222 (Georgia 1989) ("We agree that insureds should have the same opportunity as insurers to determine in advance the scope of policy provisions.").

As to this particular action, a couple of concerns are worth mentioning. First, Modern Equipment did not file this declaratory judgment action until February 2, 2001, three and a half years after the Nebraska action was commenced and almost three years after Continental Western's initial letter stating that it disputed coverage. This diminishes the credibility of Modern Equipment's conclusion that there is sufficient immediacy to its claim. Second, the Court is concerned that Modern Equipment is merely seeking the Court's "guidance" on this matter.

Nevertheless, at this stage of the proceedings Modern Equipment should be allowed to continue the prosecution of its claim. Courts have recognized an insured's need to know its insurance coverage prior to the resolution of their underlying action. *See Icarom,* 904 F.Supp. at 459; *T.H.E. Ins. Co.,* 820 F.Supp. at 239. It also seems like it could very well be necessary for Modern Equipment to obtain a declaration of coverage prior to a judg-

ment in the Nebraska action in order to prevent it from being unable to litigate the issue at all. Therefore, the Court will not dismiss Modern Equipment's claim.

■ Nor will the Court stay the proceedings so that the Nebraska action may be resolved first. This Court has the authority to grant a stay pending the outcome of a state court action which involves substantially identical issues. *See Manley v. Keystone Food Products, Inc.,* 859 F.2d 80 (8th Cir.1988). However, Modern Equipment contends that the issues in this case are totally different from and independent of the issues in the Nebraska action. Continental Western disagrees, but does not explain why the issues will be the same. The Court cannot stay the proceedings on such a limited record and argument.

### B. Amount in Controversy

■ Continental Western also brings a motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(1) alleging that Modern Equipment does not satisfy the amount-in-controversy requirement of 28 U.S.C. § 1332. As the party seeking to invoke federal jurisdiction, Modern Equipment has the burden of showing that it does not appear to a legal certainty that its claim for relief is for $75,000 or less. *See Trimble v. Asarco, Inc.,* 232 F.3d 946, 959 (8th Cir.2000). "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Adver. Comm'n,* 432 U.S. 333, 347, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). The object of this litigation is the coverage of the Policies. The limits of the Policies are $2,000,000 and $5,000,000, and the Nebraska plaintiffs are seeking over $4,500,000. These facts are enough to satisfy Modern Equipment's burden, even though Modern

Equipment may not be found liable at all in the Nebraska action. *See Opelika Nursing Home, Inc. v. Richardson,* 448 F.2d 658, 663 (5th Cir.1971) ("The speculativeness of the jurisdictional claim in this case does not warrant dismissal, for the fact that plaintiffs admitted that they may or may not suffer losses as a result of the enforcement of the 'reasonable cost' regulation does not show to a legal certainty that plaintiffs' claim is really for less than the jurisdictional amount."); *Coregis Ins. Co. v. McCollum,* 955 F.Supp. 120, 124 (M.D.Fla.1997) ("Where there is actual controversy over rights valued in excess of the required jurisdictional amount, whether contingent or liquidated, a declaratory judgment may be rendered in federal court."); *Cotton States Mutual Ins. Co., Inc. v. Peacock,* 949 F.Supp. 823, 824 (M.D.Ala.1996) ("The amount in controversy in this declaratory judgment action should be determined on the basis of the $100,000 potential exposure under the policy and a determination of whether the Plaintiffs in the state court action are limiting their claim against the policyholder to less than $50,000").

## III. CONCLUSION

Defendant's Motion to Dismiss or, in the Alternative, Motion for Stay of Proceedings (Clerk's No. 12) is denied.

**IT IS SO ORDERED.**